Cabutbers, J.,
delivered the opinion of the Court.
This is an action' of forcible entry and detainer, to recover possession of “Jolley’s Island,” in the Tennessee river, opposite the mouth of the Hiwassee, which, it is charged, was taken possession of by the defendants, forcibly and unlawfully.
The island is said to contain about - acres, and is of great value. The title is disputed, and it is supposed that there will be great advantages in the contest upon the title in occupying the position of defendant in possession. That, however, can have no effect upon this controversy, but is only assigned as the motive of the actors.
There had been a long occupancy on the part of the plaintiffs claiming under the title, of Thomas Hopkins, dec’d, derived from F. A. Ross, by deed, dated in 1822, long before the extinction of the Indian title. But whether it was good or bad, is not material in this suit, as title papers can only be looked to for the purpose of showing the extent of possession.
The only question in this sort of action is, as to the existence of an actual possession on the part of the plaintiffs, and the mode and manner of its invasion by the defendants. The object of the action is to afford a speedy, cheap and expeditious mode of recovering a possession of which any one has been deprived by force and violence, or where land is withheld from the lessor or remainder man after the termination of the lease, or life estate. This last case is a new feature in this branch of the law, unknown in England, and in this State, until the passage of the act of 1821. *13 It is set forth in section 5 of - tbat act, and is denominated “ unlawful detainer.” So we now have three cases to which this summary remedy applies, viz: 1, forcible entry as described in the second section; 2, forcible detainer . in the third section; and unlawful detainer in the fifth section.
The case before us falls within the first class, if any. It is a case of forcible entry and detainer, or it is not embraced by the act at all, and the plaintiffs must resort to the action of ejectment to try their right to the possession of- the land.
The facts of this case, so far as they need be stated to raise the question for our decision, are, in addition to those above stated, the following:
The land was rented out by Thomas Hopkins before his death, and -some of the • plaintiffs, as his heirs, ever since the date of the deed from Ross. There may have been some breaks in the possession, but it has been kept ■ up nearly all, if not the whole time since that date, down to 1849. For that year it was rented to Alfred Hutchinson, who had the privilege of grazing his cattle on the island, and was to guard the timber against waste. A man by the name of Sims lived upon the island under Hutchinson, and cultivated a part of the land, and occupied the houses. Defendant Calloway, whom it seems set up some claim to the land, instructed Martin, as his agent, (who lived near the place,) to take possession of the island for him, if it should at any time become vacant; but to take no measures to bring about an abandonment of it by Hopkins’ tenants, and to use no force or contrivance to accomplish the object, It does not appear *14 that these instructions were disobeyed, or that any inducement was held out to the tenant of Hopkins, or the sub-tenant, Sims, to quit the premises. Sims moved off in February or March, 1850, and the defendants went immediately into the possession. At that time, there was no one living upon the land, and the fences were down, and the doors and windows of the houses all open. Hutchinson had the privilege of renting the land for 1850, and intended to do so, but had not renewed his contract at this time. He did not know that Sims had left the place until he heard that defendants were there, when he gave information to the agent of plaintiffs, and this suit was instituted. It further appears by the evidence of Hutchinson,' who is examined by plaintiffs, that in the fall of 1849, about the time the frost had killed the grass and vegetation, he drove all his cattle out of the island but three, and would have driven those out, but could not get them in the boat, and they were left. After this, and before the 1st of January, 1850, he- found they were doing-well on the cane, and he determined to let them remain. Between that and the 1st of January, and after, and before the entry of defendants, he put up and took off some cattle at different times, but continued to keep on the three referred to, which three and some hogs, were on the island at the time defendants entered. Such are the material facts, and do they make out a case of forcible entry and detainer?
It has been said already, that two things must appear, to make out this case: First, that the plaintiffs had the possession, in fact; and secondly, that they were forcibly deprived of it by the defendants.
*15 1st. A possession, may exist without an actual residence on the land. It is enough if the enclosures are kept up, and the doors of the houses closed, so as to indicate that the premises are not abandoned. The use of land enclosed for pasturing, or grazing stock, is as much a possession as if it were cultivated. But the accidental continuance or ranging of stock upon a place would not constitute possession, if the intention to abandon it had been evinced by declarations or actions. There must be a concurrence of acts and intention to fill the idea of actual occupation or possession. We do not think they exist in the case before us. The term for which Hutchinson had rented expired on the 1st of January, 1850; and though he says he intended to renew his contract for another year, he had not then done so. He had, before the close of the year, removed his cattle from the island, with the exception of three, and did not leave them on purpose, but because he could not get them out. What clearer evidence could exist of a deliberate abandonment? Sims, his sub-tenant, still remained until the next Februai’y or March, without any contract for that year, and then, voluntarily, and without any concert or collusion, so far as we can see in the proof, removed, leaving open doors, gates and fences. But:
2d, If the facts constitute a possession in law, was the entry of defendants accompanied with the force required by the law? There must be actual violence to the person, " or such “ words, circumstances or actions as have a natural tendency to excite fear or apprehension of dangeror by breaking open doors or windows, or other parts of a house, or throwing *16 out goods, &c. Acts of force or violence, or appearances tending to inspire a fear or apprehension of violent acts to the person, goods, houses or' enclosures, must exist to make out the case. The great object of the law is to maintain the peace and harmony of society, and prevent bloodshed and breaches of the peace in contests for the possession of land, rather than resort to the law for the trial of titles, or to gain some .advantage in such contests. This law removes all temptation to that course, by compelling a restoration of the possession thus unlawfully taken, without regard to the best title.
It is not the simple breaking the close of another which may constitute a trespass, and implies force in the law, which constitutes this case, but there must be something more real and tangible, as above described. In the case under consideration, there was no force either to person or property; no doors to open, gates to unbolt, or fences to throw down; but all were open and unoccupied. There was no obstruction or impediment in the way of the defendants, and their entry was quiet and peaceable. This is a case very similar- — certainly not stronger than that of Greer vs. Wroe and Wife, 1 Sneed, 247.
In the finding of the jury for defendants, and the rulings and judgments of the Court, we find no error, and therefore, affirm.